1                    UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF WASHINGTON

3                         AT SEATTLE

4

5    UNITED STATES OF AMERICA,      )
                                    )
6              Plaintiff,           )
                                    )
7    vs.                            )    Case CR02-209R
                                    )
8    EDWARD DARRELL KOPLIN,         )
                                    )    **ORIGINAL**
9              Defendant.           )
     _____)

10
                                 PLEA
11   on November 26, 2002, before the Honorable Ricardo S. Martinez,

12   United States Magistrate Judge, at the United States Courthouse,

13   Seattle, Washington.

14

15

16

17   Appearances of Counsel:

18   On Behalf of Plaintiff:        BRUCE MIYAKE

19                                  ILENE MILLER

20                                  Assistant U.S. Attorneys

21   On Behalf of Defendant:        MICHAEL FILIPOVIC

22                                  Ass't Federal Public Defender

23   Sue Palmerton

24   Official Court Reporter

25   (206) 553-1899

CR 02-00209 #00000064

1    Seattle, Washington; Tuesday, November 26, 2002; 3:05 p.m.

2         THE COURT·  Thank you.  Please be seated.  All right,

3    counsel, I believe we're here in the matter of United States

4    versus Edward Darrell Koplin, criminal cause number 02-209

5    assigned to Judge Rothstein.  Present on behalf of the

6    government for this anticipated felony plea, Ms. Ilene Miller,

7    Bruce Miyake.  Michael Filipovic on behalf of Mr. Koplin.

8      Mr. Koplin, good afternoon.

9         THE DEFENDANT:  Yes, sir.  How are you today?

10        THE COURT:  Mr. Koplin, I've reviewed the documents

11   that have been prepared here by the attorneys.  I've reviewed

12   the legal file.  It appears to me that you are here intending to

13   enter pleas of guilty to two separate felony counts.  Is that

14   your understanding?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  I assume you've discussed this matter very

17   carefully and very closely with your counsel?

18        THE DEFENDANT:  Yes, sir.

19        THE COURT:  I assume you're here acting on his advice,

20   his recommendation?

21        THE DEFENDANT:  Yes, I am.

22        THE COURT   Do you understand that that's exactly his

23   job, that is his role, to give you advice, to make a

24   recommendation?

25        THE DEFENDANT:  Yes, I do.

1          THE COURT:  However, do you understand that the

2   consequences of pleading guilty will fall on you, not on him?

3   Therefore, he can't decide this.  You are the only one that can

4   make the decision to waive your right to have the government

5   prove these charges and enter a plea of guilty.  Do you

6   understand that?

7          THE DEFENDANT:  I do understand that.  Can I ask him a

8   question?

9          THE COURT:  Absolutely.

10          MR. FILIPOVIC.  Your Honor, before we proceed, I'll

11   just put one thing on the record.  I don't think the government

12   would have any objection.

13      This is a conditional plea which allows Mr. Koplin to go

14   forward with an appeal of a denial of a motion to suppress

15   evidence.  And Mr. Koplin just wanted to make sure that Your

16   Honor was aware of that.

17          THE DEFENDANT:  Thank you.

18          THE COURT:  Yes, sir.  In fact, we'll go through the

19   entire plea agreement in detail.

20          THE DEFENDANT:  Okay.  Fine.

21          THE COURT:  Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Let me tell you how we will

24   proceed.   Let me tell what you my role is during this hearing.

25   I need to ask you a series of questions.  The questions are

1  designed to make sure that you do understand the nature of the

2  charges you're pleading guilty to, the rights that you give up

3  by asking the Court to accept your plea, the agreement that

4  you're reaching with the United States Government, including the

5  district out of Utah, and the potential consequences of this

6  particular plea.

7       So, as we go through the question and answer session, if you

8  have any questions for your counsel, for government counsel or

9  myself, this would be the time to ask those questions.  Is that

10  understood?

11            THE DEFENDANT:  Thank you.

12            THE COURT:  I want to advise you one other thing.  We

13  will swear you in before we begin the formal question and answer

14  session.  What that means is you are swearing to tell the truth

15  If you were to deliberately give false responses, that could be

16  the basis for another future charge of either making a false

17  statement or even perjury.  Is that understood?

18            THE DEFENDANT:  Yes.

19            THE COURT:  All right.  Mr. Koplin, if you wish to

20  proceed with the plea, let me have you stand, raise your right

21  hand.  Our clerk will administer the oath.

22       (The defendant was sworn.)

23            THE COURT:  All right, Mr. Koplin, let me ask some

24  questions first of all about you, your background.  The caption

25  indicates your name is Edward Darrell Koplin.  Is that your true

1    and correct name?

2            THE DEFENDANT:  Senior

3            THE COURT:  Senior, thank you.  What is your date of

4    birth, sir?

5            THE DEFENDANT·  7/2/34.

6            THE COURT:  How much formal education have you

7    completed?

8            THE DEFENDANT:  I believe it's about 18 years.

9            THE COURT:  I'm assuming you are able to read and write

10   in English?

11           THE DEFENDANT·  Yes.

12           THE COURT·  I have a consent form, sir.  I have a

13   lengthy plea agreement in this matter.  Have you reviewed these

14   documents for yourself?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Did you go over them with your counsel?

17           THE DEFENDANT.  Yes.  We're just in the middle of the

18   second time for me, but yes, we went over them a little while

19   ago.

20           THE COURT:  Are you satisfied you understand everything

21   that is contained within these documents?

22           THE DEFENDANT·  I'm satisfied I understand.  I'm

23   praying that, of course, we get the new trial or whatever

24   they're going to call that, to get the suppression motion.

25           THE COURT:  I understand that.  The question I have

1    for you is do you understand what this is?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you ever been treated for any type of

4    mental illness or any addiction to narcotic drugs?

5              THE DEFENDANT.  No.

6              THE COURT·  Within the last day or two, 28 to 48 hours,

7    have you taken any type of drug any prescription --

8              THE DEFENDANT·  No.

9              THE COURT:  --  any prescription medication, any

10   alcohol, anything that might affect your ability to understand

11   what we're discussing today?

12             THE DEFENDANT:  No, it won't affect my ability.

13             THE COURT:  What did you take?

14             THE DEFENDANT.  Well, I am -- I have high blood

15   pressure.  I don't know if you want the pill names.  They

16   changed them all since I got here.

17             THE COURT:  You're taking medication for your high

18   blood pressure?

19             THE DEFENDANT.  For high blood pressure.  I have COPD,

20   if you're familiar with that.  And I take Coumadin for that.

21   And I bleed easily.  I take 14 pills.  I'm sitting there trying

22   to think what the hell they all are.

23             THE COURT·  Let me explain to you.  The only reason I'm

24   asking this is because this is a highly critical portion of this

25   entire prosecution for you.   You're going to be waiving certain

1  very important rights.  I need make to sure that there is

2  nothing affecting your ability to understand what it is we're

3  discussing here today.

4           THE DEFENDANT:  Okay.

5           THE COURT.  As far as I can tell, you understand you're

6  in a courtroom.  You understand you're answering questions being

7  put to you from the Court.  You understand you're under oath.

8  You understand how important all this proceeding is.

9           THE DEFENDANT:  Yes, I do.  I also have diabetes  I

10  take two or three pills for that.  I can't tell you exactly the

11  names of them right now.  I take the Coumadin for the COPD.

12  And I have atrial fibrulation of my heart.

13          THE COURT:  Mr. Koplin, that's all right.  I'm

14  satisfied that --

15          THE DEFENDANT·  Okay.  But I don't believe there's

16  anything there that will affect my ability.

17          THE COURT.  All of your responses have been

18  appropriate.  You understand everything that is going on.  I'm

19  satisfied.

20          THE DEFENDANT:  Okay.  Thank you.

21          THE COURT:  Let me get to the documents that are in

22  front of me.  The first document is this consent form.  And the

23  reason I bring this up first is because this document advises

24  you that it is your absolute right if you wish to have this

25  entire hearing that we're doing right now held before the

1   assigned district judge.  In this case, Judge Rothstein.

2   However, it is one of your rights, you can consent, you can

3   agree to stay here and do the hearing in front of me.

4       The document concludes by advising you that ultimately it

5   will be Judge Rothstein who decides whether to accept or reject

6   the pleas here.  Assuming she accepts them, she'll be the one

7   that imposes sentence.  Do you understand?

8           THE DEFENDANT:  I do.

9           THE COURT·  Now let's go over the plea agreement in

10  detail, sir.  Do you have a copy in front of you?   Turn back to

11  the front, page 1   And you see where it says there paragraph 1,

12  the charges?

13          THE DEFENDANT:  Uh-huh.

14          THE COURT·  Says that you as the defendant, after

15  having been advised of your right to have this matter tried

16  before a jury, you agree to waive or give up that right and

17  enter a plea of guilty to the following charges contained in the

18  second superseding indictment.  That is the charging document in

19  the legal file.  By entering this plea, you would be waiving

20  objections to the form of the charging documents.

21      Now, count 1 is coercion and enticement in violation of

22  Title 18, United States Code, Section 2422(a).  Count 2 is

23  transportation of a minor in violation of Title 18, Section

24  2423(a).

25      Do you understand those are the two counts you would be

1   pleading guilty to?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Paragraph 2 sets out the elements of these

4   offenses.  In other words, what the government would have to

5   prove beyond any reasonable doubt to the satisfaction of the

6   unanimous jury if you wanted before they could get a conviction

7   for either of these charges.

8      All right, for count 1, they would have to prove that you

9   knowingly persuaded, induced, enticed or coerced an individual

10  to travel in interstate commerce.  And secondly, that you did so

11  to engage in sexual activity for which that person can be

12  charged with a criminal offense.

13     Now, the elements for transportation of a minor as charged

14  in count 2 are as follows.  First, that you knowingly

15  transported Jane Doe from Salt Lake City, Utah, to Kent,

16  Washington.  You did so with the intent that Jane Doe engage in

17  any sexual activity for which any person can be charged with a

18  criminal offense.

19     And finally, that Jane Doe was under the age of 18 years of

20  age at that particular time.  Do you understand the elements of

21  these two charges?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Paragraph 3 sets out the maximum statutory

24  penalties the court can impose for these two violations.  Now,

25  remember Judge Rothstein is the assigned district court judge

1    She can impose up to the maximum potential penalty.  Obviously

2    she can impose something less than that, too.   But because she

3    can impose the maximum, you need to know what those maximums can

4    be

5        For both of those counts, counts 1 and 2, a fine of up to

6    $250,000 can be imposed, up to three years of supervised release

7    following release from custody, and there is a mandatory $100

8    penalty assessment for each count for a total of 200 for both

9    counts.  Do you understand?

10            THE DEFENDANT·  Uh-huh, I do.

11            THE COURT:  In terms of imprisonment, the count 1,

12   coercion and enticement, can be up to ten years.  For count 2,

13   the transportation, that can be up to 15 years.

14       You're agreeing that the penalty assessments, those are the

15   $100 penalty assessments, should be paid at or before the time

16   of sentencing.

17       You're also agreeing that any monetary penalties imposed by

18   the court -- that includes assessments or fines or restitution,

19   whatever -- would be due and payable immediately.

20       You further agree to submit a completed financial statement

21   of debtor form as requested by the U.S. Attorney's office.

22       And finally, it says here that you understand that that

23   period of supervised release that we discussed is a period of

24   time during which you would be subject to certain restrictions

25   and requirements.  So, if you were to violate any of those

1   conditions that were imposed, you could be returned to prison or

2   custody for all or part of the term of supervised release that

3   was originally imposed.

4       And that could technically result in your serving a total

5   term of imprisonment greater than the statutory maximum we've

6   just reviewed.

7       Do you have any questions about anything in paragraph 3?

8               THE DEFENDANT·   Excuse me.

9               THE COURT:   Any questions, sir?

10              THE DEFENDANT:   No, sir.

11              THE COURT.   All right.   Paragraph 4 sets out the rights

12   that you are giving up by asking the Court to accept your plea.

13   Let me go over those with you.

14       By pleading guilty, you give up your right to plead not

15   guilty.   The right to a speedy and public trial before a jury of

16   peers.

17       The right to the effective assistance of counsel at trial.

18   And obviously including the fact that if you could not afford

19   counsel, the right to have the court appoint one for you.

20       The right to be presumed innocent until guilt has been

21   establilshed at trial beyond any reasonable doubt.   The right to

22   confront and cross-examine witnesses that might be called

23   against you.

24       The right to compel or subpoena witnesses to appear and

25   testify on your behalf.   Your right to testify yourself.   Or if

1   you wanted, you could always choose to remain silent at trial.

2   And if you did, that silence could not be used against you.

3       Do you understand you give up each of those rights by

4   pleading guilty?

5           THE DEFENDANT:  Yes, sir, I do.

6           THE COURT:   Paragraph 5 talks about the applicability

7   of the sentencing guidelines.  Those are the ones set out by the

8   United States Sentencing Commission.  They apply to this case.

9   But it goes on to advise you that it will be the sentencing

10  court that determines your specific guideline range, and that

11  will occur at sentencing.

12      Remember I told you moments ago she has the authority under

13  the law to impose up to the maximum sentence.  And certainly

14  under some set of circumstances, whatever sentence she gives you

15  could be different from or depart from whatever the applicale

16  guideline range calls for.

17      That court is not bound or restricted by any recommendation

18  regarding what sentence should be imposed or how the range is

19  calculated or estimated that is offered by you or by the

20  government or U. S. Probation.

21      And that you will not be allowed to withdraw from the plea

22  of guilty solely because of the sentence imposed by the court.

23  Do you understand?

24          THE DEFENDANT:  Can that also go the other way?   In

25  other words, can it go from the maximum to the minimum?

1      THE COURT:  She can impose -- she has a range of

2   potential sentences that she can certainly impose.  She may

3   depart from whatever the applicable guideline range calls for.

4   She has to give valid reasons for doing so.   There may be other

5   consequences that flow as a result of that.  But yes, you're

6   absolutely right.

7      THE DEFENDANT:  Thank you.

8      THE COURT:  Do you understand, sir?

9      THE DEFENDANT:  Yes

10      THE COURT:  In this case, Mr. Koplin, has anyone either

11   promised or guaranteed what exact sentence you will receive?

12      THE DEFENDANT:  No.

13      THE COURT:  Paragraph 7 talks about restitution.  It

14   says you are to make restitution in an amount to be determined

15   with credit for any amounts already paid.  That would be due and

16   payable immediately.  But, of course, depending on the amount,

17   that might be payable with a schedule of payments that is set

18   out by U.S. probation as ordered by the court.  Is that

19   understood?

20      THE DEFENDANT:  It is.  My question is simply if you

21   can't afford all of it now, that a schedule can be set up?

22      THE COURT:  Yes.

23      THE DEFENDANT:  Thank you.

24      THE COURT:  Paragraph 8 contains the statement of

25   facts   These facts as set out here you are agreeing with the

1  government are true and correct.  And basically they're here for

2  two reasons.  One, for purposes of calculating the base offense

3  level under the sentencing guidelines and, two, because they

4  support your plea of guilty, and also for purposes of

5  restitution and forfeiture.

6     In other words, this is what you did that makes you guilty

7  of the offenses you're pleading guilty to.  Have you reviewed

8  these statement of facts carefully?  Have you reviewed the

9  facts?

10          THE DEFENDANT:  Yes.

11          THE COURT.  Are those facts are true and correct?

12          THE DEFENDANT:  Pardon me?

13          THE COURT:  Are these facts true and correct?

14          THE DEFENDANT:  Yes.

15          THE COURT·  All right.  Mr. Koplin, I'm not going to

16  review each and every single line there.  However, at the end of

17  my questions, I'm going to ask either Ms. Miller or Mr. Miyake

18  to summarize what facts they'd be ready to prove, assuming they

19  had to take this matter to trial.

20     Let me now turn your attention to the bottom of page 5,

21  paragraph 9 that talks about the dismissal of count 3.  Because

22  it says there that as part of this plea agreement, the United

23  States Attorney's office for the Western District of Washington

24  agrees to move to dismiss count 3 of the second superseding

25  indictment at the time of sentencing.

1        You're acknowledging, however, that for purposes of

2   preparing any presentence report, the U.S. Attorney's office

3   will provide U. S. Probation with evidence of all relevant

4   conduct committed by you.

5        And you also agree that the charge to be dismissed is based

6   on facts.  In other words, it will not provide you with any

7   basis for any future claims as a prevailing party under the Hyde

8   Amendment.  Do you understand?

9               THE DEFENDANT:  Yes, sir.

10              THE COURT:  Paragraph 10 talks about other charges.  It

11  says the U.S. Attorney's office in return for your pleas here,

12  and assuming you live up to all these conditions you've agreed

13  to, agrees not to prosecute you for any other offenses other

14  than any crimes of violence which you may have committed within

15  the Western District of Washington prior to the date of this

16  agreement and about which the government presently has

17  information of or about which you provide information pursuant

18  to this agreement to cooperate.  Do you understand?

19              THE DEFENDANT:  Yes.

20              THE COURT.  Paragraph 11 talks about Utah charges.  It

21  says the U.S. Attorney's office for the Western District of

22  Washington agrees pursuant to Federal Rule of Criminal Procedure

23  20 to accept a conditional plea of guilty to the charges of

24  manufacture of child pornography, count 1, possession of child

25  pornography, count 2, as charged in the District of Utah Central

1   Division in the cause number 202CRO427TC.  Is that your

2   understanding?

3              THE DEFENDANT:  Yes.

4              MR. FILIPOVIC:  Your Honor, if I may just address that

5   paragraph very briefly?  These charges would be before the Court

6   as well if the Rule 20 paperwork had already gone through.  But

7   because of a trial date on Monday, we added this language in

8   this plea agreement and we're deferring actually entering the

9   plea until that process is completed.

10     It's contemplated by the parties, however, that sentencing

11  would commence on both matters at the same time.  And it's also

12  contemplated by the parties that the conditional nature of this

13  plea also applies to the Utah charge, even though the

14  suppression hearing wasn't actually heard under that cause

15  number.

16     It's the parties' understanding that if we were to prevail

17  on the suppression issues or issue, that Mr. Koplin would then

18  be allowed to withdraw his plea on both sets of charges.

19             THE COURT:  Is that the government's understanding?

20             MS. MILLER:  That's correct, Your Honor.

21             THE COURT:  Thank you, Mr  Filipovic.  Paragraph 12,

22  Mr. Koplin, talks about your right to appeal.  Pursuant to the

23  Federal Rules of Criminal Procedure, you agree with the

24  government that you reserve the right to appeal the specific

25  issues raised in the pretrial motion to suppress evidence and

1   custodial statements, and the various issues raised in your

2   memorandum supporting those motions that were denied by order of

3   the court on November 21st, 2002.  Is that your understanding?

4            THE DEFENDANT:  Yes.

5            THE COURT·  Under paragraph 13, you agree to forfeit

6   immediately to the government any right, title and interest in

7   any and all property, real or personal, that was used or

8   intended to be used in any manner or part to commit or

9   facilitate the commission of the offenses charged in counts 1

10  and 2.

11     And that includes, there is a list of items here, currency,

12  a '99 Dodge Grand Caravan, various certain items of jewelry.

13  Talks about other property seized, books, videos, looks like

14  sexual aids, et cetera.  Do you understand?

15           THE DEFENDANT·  Yes.

16           THE COURT:  You're also agreeing not to pursue any

17  claim to any of the listed property in any civil forfeiture

18  proceeding, administrative or judicial, that could be initiated.

19  Is that your agreement?

20           THE DEFENDANT.  Yes.

21           THE COURT:  Paragraph 14 deals with the voluntariness

22  of this plea.  Kind of brings me back to where we began the

23  hearing this afternoon about your counsel's role, about the fact

24  this has to be your decision.

25     Let me ask you the question this way.  In this case, has

1   anyone threatened you in any way or made any promises to you

2   other than the ones contained in this agreement and the ones

3   we've put on the record that were made to induce you to change

4   your pleas from not guilty to ones of guilty?

5           THE DEFENDANT:  No.

6           THE COURT:  You're doing this, then, of your own free

7   will?

8           THE DEFENDANT:  Yes.

9           THE COURT.  15 talks about the statute of limitations.

10  That is the formal time period the government has in which they

11  must bring charges for any specific criminal activity.

12    This says in the event this agreement is not accepted by the

13  court, for whatever reason, or in the future you breach or you

14  violate any of these terms, then that time frame, that statute

15  of limitations will be deemed to have been tolled or frozen,

16  stopped from running from the date of the plea agreement to

17  either 30 days following the date of nonacceptance of the

18  agreement by the court or 30 days following the date on which a

19  breach of the agreement by you is discovered by the U.S.

20  Attorney's office.  Do you understand?

21          THE DEFENDANT:  I do.

22          THE COURT:  The final paragraph says you and the

23  government acknowledge these terms make up the entire plea

24  agreement of the parties.  In other words, there are no other

25  terms, no other conditions, no other deals you're making with

1  the government

2      And the final two sentences indicate this agreement only

3  binds the U.S. Attorney's office for the Western District of

4  Washington.  It does not bind any other U.S. Attorney's office,

5  any other office or agency of the United States, any other state

6  or local prosecutor.  Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Koplin, let me have you now turn back

9  to the statement of facts.  And I believe they begin at the

10  bottom of page 4 and then most of page 5.  Let me ask either Ms.

11  Miller or Mr. Miyake just to briefly summarize what facts they

12  would be ready to prove, assuming they had to take this matter

13  to trial.  Counsel.

14          MS. MILLER:  Your Honor, if this case were to proceed

15  to trial, the government would be relying upon the following

16  facts.  On June 6th, the Kent police were notified by Child

17  Protective Services that the defendant Edward Darrell Koplin had

18  traveled from Salt Lake City to the Kent, Washington, area with

19  an unrelated 11-year-old female.

20      On that same day, the Kent place went to the Marriott Town

21  Place Suites Hotel and verified that Koplin was, in fact,

22  staying in the room.  Upon making contact with Koplin, they

23  discovered an 11-year-old girl inside of his hotel room.

24      Koplin consented to a search of his room.  And during that

25  search, they found numerous sexual aids, to include several

1   paperback books titled Horse Happy School Girl, Sex Before 12,

2   and Animals for Bizarre.  They also sound several packages of

3   Viagra.

4        The defendant was placed under arrest and was taken to the

5   Kent correctional facility where he was advised of his Miranda

6   rights by Kent detectives.  There Koplin agreed to speak with

7   the detectives where he detailed his relationship with the 11-

8   year-old female.

9        During the interview, the defendant admitted to inserting

10  his finger in her anus while in Kent, Washington.  And also that

11  he had shown her oral sex by using his tongue to stimulate her

12  vagina.

13       The defendant agreed though he enticed the 11-year-old girl

14  to travel from Salt Lake City, Utah, to Kent, Washington, with

15  the intent to engage in sexual activity with her.

16            THE COURT:  Thank you, counsel   Mr. Koplin, she has

17  just briefly summarized what is contained in greater detail in

18  that statement of facts.

19            MR. FILIPOVIC:  Your Honor, if I may just briefly

20  interject?  Just one comment Ms. Miller made, she referred to

21  the search being a consent search, which is not in the statement

22  of facts set forth in the plea agreement.  That is actually one

23  of the issues that will be litigated in the appeal.

24       So, assuming that fact is removed from the summary, I think

25  it tracks pretty directly the facts.

1            THE COURT:  With that change, Mr. Koplin, you agree

2   that the rest of the facts are true and correct?  In other

3   words, the issue of whether or not the search was consensual is

4   the one you are litigating.

5            THE DEFENDANT:  That is what our suppress understanding

6   is all about.

7            THE COURT:  I understand.  Aside from that.  Let's

8   leave one that aside for the moment.  I'm not asking you to

9   agree or disagree that it was or was not consensual.  We'll

10   leave that to another forum, another day, another court.

11            THE DEFENDANT:  Thank you.  Then it's yes.

12            THE COURT:  Aside from that, do you agree these facts

13   are true and correct?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Mr. Koplin, I assume you are a citizen of

16   the United States?

17            THE DEFENDANT:  Yes.

18            THE COURT:  You understand that when you plead guilty

19   to felony criminal charges, you lose valuable civil rights?  You

20   lose the right to vote, you lose the right to sit on a jury, you

21   lose the right to run for elected office, you lose the right to

22   own, to possess or exert any control over any type of firearm,

23   any other destructive device?  That includes all ammunition.

24            THE DEFENDANT:  I didn't understand that, but I

25   understand it now.

1              THE COURT:   Do you understand that those rights are

2    lost forever unless until if you become eligible at some point

3    in the future, you return to court and you ask the court, a

4    court of competent jurisdiction, to restore one or more of those

5    rights?  In other words, they just don't come back

6    automatically.

7              THE DEFENDANT.   Okay.

8              THE COURT:   Understand that?

9              THE DEFENDANT·  Yes.

10             THE COURT:   Sir, do you have any questions for your

11   counsel, for the government or for me about anything we've

12   reviewed, discussed, anything at all that deals with the entry

13   of pleas to these two counts?

14             THE DEFENDANT:   Do you want me to stand?  Does it

15   matter?

16             THE COURT:   I'm just asking do you have any questions.

17             THE DEFENDANT·  I do have.

18             MR. FILIPOVIC:   If, Your Honor, if I may just have a

19   moment?

20             THE DEFENDANT:   I'm sorry.

21             MR. FILIPOVIC:   Your Honor, if I can summarize your

22   question for you.   Mr. Koplin's concern was if he were to

23   prevail on the appeal and then were to prevail at a subsequent

24   trial, whether this guilty plea would then be essentially gone,

25   there would be no finding of guilty.  And I've advised him that,

1   in fact, that is true.  If those two events occurred, then the

2   guilty plea would no longer exist and the conviction would no

3   longer exist.

4           THE COURT.  That is correct, Mr. Koplin.  It's a

5   conditional plea.  Do you understand?

6           THE DEFENDANT·  Yes.

7           THE COURT.  Do you have any questions, then, other than

8   that?

9           THE DEFENDANT:  Yes, I understand.

10          THE COURT:  Any other questions?

11          THE DEFENDANT:  A million but not here today.

12          THE COURT:  All right.  Then tell me how you'd like to

13  plead for our record to the two counts.  Count 1 being coercion

14  and enticement, violation of Title 18.  Count 2 being

15  transportation of a minor, also in violation of Title 18.  How

16  would you like to plead?

17          THE DEFENDANT.  Guilty.

18          THE COURT.  Mr. Filipovic, is there any legal reason

19  you can think of why this Court should not accept his plea?

20          MR. FILIPOVIC:  No, Your Honor.

21          THE COURT:  Counsel, I agree.  After the question and

22  answer session, I am quite satisfied Mr  Koplin understands the

23  nature of the charges, the elements of those offenses, the

24  rights that he gives up by pleading guilty and the potential

25  consequences of the entry of this plea.

1       After reviewing the plea agreement in detail, the court is

2   satisfied that the offenses charged here are, in fact, supported

3   by an independent basis in fact containing each of the essential

4   elements of that offense.  And most importantly, the Court is

5   satisfied that his pleas of guilty are made knowingly, willingly

6   and are voluntary.

7       The Court has signed the report and recommendation

8   recommending he be adjudged guilty and have sentence imposed.

9       Madam Clerk, do we have a sentencing date scheduled for him?

10      THE CLERK:  We do.   Sentencing is scheduled before

11  Judge Rothstein on January 24th, 2003, at 9:30 a.m.

12      THE COURT:  Mr. Koplin, as a result of this particular

13  hearing, I'm ordering that presentence reports be prepared for

14  the benefit of the sentencing judge.  Your counsel will do one,

15  the government will do one from their perspective.   United

16  States Probation does an independent report.

17      That means a probation officer will contact you about

18  setting up a date for an interview.  That interview may very

19  well be in the presence of your counsel if you wish.

20      THE DEFENDANT:  Okay.

21      THE COURT:  Once they reduce it to writing, they'll

22  make it available for you to review.  Go over it carefully

23  because if there is anything in there that you think is wrong or

24  that you object to, for whatever reason, let Mr. Filipovic know.

25      THE DEFENDANT:  Okay.

1          THE COURT:  That gives him the ability to attempt to

2    correct whatever portions you point out or at the very least

3    submit objections to those portions in time for the sentencing

4    judge to review prior to the actual sentencing date.  Do you

5    understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Finally today, do you have any questions

8    for me before we recess or we conclude this particular hearing?

9          THE DEFENDANT:  Not today, sir.  Thank you.

10         THE COURT:  Counsel, if there is nothing further, we'll

11   be at recess.

12         MR. FILIPOVIC:  I have one question for the Court.

13   Since we expect to be coming back here with another plea

14   agreement on the Utah matter.  Would Your Honor wish to hear

15   that, even if there was a different duty magistrate, so there be

16   some consistency?

17         THE COURT:  I think that makes sense.  Once we get the

18   paperwork on the Rule 20 Utah matters, then you'll appear again

19   before me and we'll do the plea on that one.

20         THE DEFENDANT:  Very good, sir.  Thank you.

21         THE COURT:  We'll be in recess.

22         THE DEFENDANT.  Thank you.

23      (At 3:37, court was in recess.)

24

25

CERTIFICATE

   I, Susan Palmerton, court reporter for the United States
District Court in the Western District of Washington at
Seattle, was present in court during the foregoing matter and
reported said proceedings stenographically.

   I futher certify that thereafter, I, Susan Palmerton, have
caused said stenographic notes to be transcribed via computer,
and that the foregoing pages are a true and accurate
transcription to the best of my ability.

   Dated this 2nd day of Decemnber, 2002.


_____
            Susan Palmerton